496 A.2d 1213

COMMONWEALTH of Pennsylvania

v.

Gregory WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Submitted April 9, 1985.

Filed Aug. 9, 1985.

494

William R. Hare, Assistant Public Defender, Beaver, for appellant.

Edward J. Tocci, District Attorney, Beaver, for Commonwealth, appellee.

Before WIEAND, JOHNSON and MONTGOMERY, JJ.

WIEAND, Judge:

Gregory Williams was tried by jury and was found guilty of rape, aggravated assault, and making terroristic threats in connection with a beating inflicted upon his former girl friend on November 29, 1982, in Aliquippa, Beaver County. On direct appeal from consecutive sentences imposed for rape and aggravated assault, Williams complains of evidentiary rulings made by the trial court and ineffective assistance allegedly rendered by counsel. He also contends that his conviction for aggravated assault merged for sentencing purposes in the conviction for rape. We find neither trial nor sentencing error, but, because there is arguable merit in several of Williams' averments that trial counsel rendered ineffective assistance, we remand for an evidentiary hearing.

Williams and Jacqueline Jamison had been living together but had separated. On November 29, 1982, while Ms. Jamison was sitting in a bar in Aliquippa, Williams entered and asked her to come outside to talk to him about a money matter he wished to discuss. Jamison left the bar, and the two of them walked down the street, arguing loudly, with Williams pushing and threatening Jamison. When they entered a wooded lot at the end of the street, Williams began beating his former girl friend. He knocked her down and continued to beat her when she tried to rise. According to the Commonwealth's evidence, Williams then drew a knife and used it to cut Jamison's pantyhose and underwear. He also cut her legs, ankle and hand. Finally, he forced her to have sexual intercourse with him. Williams conceded that he had beaten his former girl friend but denied that he had cut her with a knife. They had resolved their dispute, he contended, and then had engaged in consensual intercourse. Thereafter, in any event, they returned to the bar, where a friend of the victim intervened. She took Jamison to a nearby house, where Jamison's missing shoes were replaced. The police were then notified.

While the victim was at the police station, she was met by her sister, Carol Ann Kimbrough, who had been summoned. Carol Ann testified at trial to the observations which she had made regarding her sister's condition. Despite the meager information which the witness was able to impart to the jury, defense counsel undertook extensive cross-examination. In response to questions asked by defense counsel, Carol Ann told the jury that she had disapproved of the relationship between appellant and her sister, that appellant had been in the penitentiary, and that appellant had previously shot the victim in the mouth. Then the following occurred:

Q. Okay. Did you have any knowledge that [Jacqueline] was a prostitute?

A. Vaguely. I couldn't put my finger on it. I questioned her about it.

Q. Did she ever admit this to you?

A. No, she did not.

Q. Did you ever personally file charges against Gregory Williams?

A. I never personally filed charges against him. My father did. My 78-year-old father did, and we had a hearing down at Mr. Ayoob's office, and Attorney Ceris was his attorney.

Q. And when was that?

A. That was—

Q. Just approximately?

A. —last summer. I don't know the exact date.

Q. And, even after that, Jackie still lived with Gregory; isn't this correct?

A. I believe so; but I didn't have any dealings with them.

Q. Since Jackie was living with Gregory, since you heard some rumors that she was being a prostitute, did you think Gregory was the one who had her being a prostitute?

A. Yes.

> MR. KELKER: May we approach the Bench, Your Honor?

N.T. at 186–187. There followed a lengthy sidebar conference during which defense counsel attempted to justify his cross-examination as it pertained to the victim's possible prostitution, while the prosecuting attorney requested cautionary instructions.[1] The trial court instructed the jury as follows:

> THE COURT: Members of the jury, I am going to give you a special instruction, and this relates to the charge of rape in this case, and there is a charge against this Defendant of rape. Now, there is a statute that provides as follows: "Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this Chapter," and that is the Chapter dealing with rape, "except evidence of the alleged victim's past sexual conduct with the Defendant"; now, that is, where consent of the alleged victim is at issue. What that says is that evidence of sexual relationships between the alleged victim and the Defendant, himself, is admissible, all evidence that relates to their relationship—that is, the alleged victim and this Defendant—and you may hear and there may be evidence put in concerning that for you to evaluate the question of rape, because that's where the question of consent is at issue; and I understand, in this case, that the question of consent is at issue and will be placed in issue.

> Now, I will go into more detail in my general Charge; but, on the crime of rape, there are the elements, first, that the Defendant engaged in sexual intercourse with the victim and that the victim was not the spouse or the wife of the Defendant and that the intercourse was accomplished through forcible compulsion or by threat of forcible compulsion that would prevent resistance by a

---

1. The District Attorney's initial request was that the jury be instructed to disregard the evidence. The request was modified during sidebar discussion to seek cautionary instructions.

person of reasonable resolution; in other words, that the intercourse was not consented to, that it was obtained by forceful compulsion or by the threat of forceful compulsion that would prevent resistance by a person of reasonable resolution. So, evidence of the relationship between the Defendant and the alleged victim is relevant in this case; but the relationship of the alleged victim with other persons other than the Defendant, any relationships she might have had—any sexual relationships in the past with other persons, has no relevance to this charge of rape with respect to this Defendant, you understand, or even her reputation that might be given as to her conduct with other persons. You can't go into those past relationships, whatever they may be, or even the reputation of those, because, whoever the woman is, she has the right to give consent, you understand, and she cannot be forcefully compelled into an act of intercourse; and where the question of consent is raised and the victim says she did not consent and the Defendant says she did consent, you can examine the relationships between the Defendant and the victim and what the past relationships have been, but you cannot examine and are to completely disregard on the charge of rape any relationships of the alleged victim that she might have had with other men in the past.

Now, there are other charges here also against this Defendant—the charge of kidnapping, the charge of aggravated assault, the charge of assault, the charge of terroristic threats; and whether or not the particular lifestyle of the victim and the relationship of that with this Defendant would involve any evidence concerning the alleged victim and her lifestyle as might reflect on these other charges, that would be something for the Court to consider and for you to consider. But I am saying to you, on the charge of rape, that the alleged victim's past relationships with other people other than the Defendant has no relevance in the case.

All right. You may proceed.

N.T. at 209–212. On appeal, Williams argues that "the Court sustained the objection and refused to allow this type of testimony to come in." It should have been allowed, he argues, to show that the witness was biased against appellant because she believed appellant had made her sister, the victim, a prostitute.

■ We reject appellant's argument. The trial court did not sustain an objection to the testimony of the witness that she believed appellant had made her sister a prostitute. The court also did not order stricken the testimony of the witness which the jury had heard. The trial court did instruct the jury that evidence of the victim's sexual acts with third persons, if any, was not relevant to the charge of rape because "whoever the woman is, she has the right to give consent ... and she cannot be forcefully compelled into an act of intercourse." [2] The trial court's remarks did not instruct the jury and appellant's counsel did not request an instruction regarding the significance of the testimony to show bias on the part of the witness. Moreover, the record discloses no ruling of the trial court that would have precluded an argument that the witness' dislike of the appellant could be weighed in determining the credibility of her testimony.

■ If the trial court's instructions had the effect of precluding further evidence of the victim's sexual contacts with third persons, we are nevertheless of the opinion that appellant should not receive a new trial. In *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985), this Court held that the Rape Shield Law [3] may not be used to exclude relevant evidence tending to show bias on the part of a witness in order to attack the credibility of his or her testimony. Not all relevant evidence, however, is admissible. "Although logically relevant, evidence tending to show the victim's prejudice or lack of credibility may be excluded if 'it would so inflame the minds of the jurors that its

2. Appellant did not object to the substance of the court's cautionary instructions and did not request contrary or additional instructions.
3. 18 Pa.C.S. § 3104.

probative value is outweighed by unfair prejudice.'" *Id.*, 337 Pa.Superior Ct. at 567, 487 A.2d at 401, quoting *Commonwealth v. Stewart*, 304 Pa.Super. 382, 387, 450 A.2d 732, 734 (1982), quoting *Commonwealth v. Strube*, 274 Pa.Super. 199, 216, 418 A.2d 365, 374 (1979). Applying this balancing test to the facts of the instant case, it seems clear that evidence of the witness' belief that appellant had led her sister, the alleged victim, into prostitution could properly be excluded. The evidence would have created a collateral issue. Its avowed purpose, to attack the credibility of a witness whose testimony had been limited both in scope and value, was negligible. The proposed additional cross-examination would have pertained to the witness' subjective belief, a belief that was not otherwise supported by factual evidence, that the victim had engaged in acts of prostitution. The slight value of such evidence was heavily outweighed by its potential for mischief. Not only was there a danger that it would arouse unduly the passions of the jury but there was also a possibility that it would encourage a verdict based on passion instead of calm reflection. Under these circumstances, appellant was not entitled to pursue further the cross-examination of the witness regarding a belief that her sister, the victim of the alleged rape, had become a prostitute. Compare: *Commonwealth v. Coia*, 342 Pa.Super. 358, 492 A.2d 1159 (1985); *Commonwealth v. Dear*, 342 Pa.Super. 191, 492 A.2d 714 (1985).

■ A criminalist called by the Commonwealth to testify regarding the presence of sperm on slides delivered to him for examination, said, "I suspect that they [the slides] were from the vaginal area." This prompted a defense objection, which the trial court sustained. In doing so, the court told the jury

> this witness can't assume or suspect something that he doesn't really know.... This witness may testify to matters that he examined and what he found himself. The proof of where these articles came from, if this witness does not, himself, know, must come from proof from someone else.

Other evidence, however, showed that the slides had been vaginal smears. Therefore, the trial court did not err when it allowed the witness to testify that his examination of the vaginal slide had disclosed the presence of sperm. This tended to demonstrate, as the Commonwealth was required to show, that the victim of the alleged rape had engaged in sexual intercourse. In view of appellant's admission that he and the alleged victim had, in fact, engaged in intercourse, it is difficult in any event to comprehend that the criminalist's testimony was harmful.

■ According to the several versions of the events on the night of November 29, 1982, an assault had been committed on Jamison because of a money dispute between her and appellant. This assault had preceded the act of sexual intercourse. The offenses of aggravated assault and rape, therefore, were successive. Moreover, each required an element not essential to the other. Consequently, the offenses did not merge. The court could properly impose consecutive sentences of imprisonment for aggravated assault and rape. See: *Commonwealth v. McCusker*, 363 Pa. 450, 457–458, 70 A.2d 273, 276–277 (1950); *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104–105, 21 A.2d 920, 921 (1941); *Commonwealth v. Olsen*, 247 Pa.Super. 513, 520–521, 372 A.2d 1207, 1211 (1977). Accord: *Commonwealth v. Padden*, 335 Pa.Super. 51, 54, 483 A.2d 950, 952 (1984); *Commonwealth v. Dieterly*, 294 Pa.Super. 25, 29–30, 439 A.2d 732, 734 (1981); *Commonwealth v. Johnson*, 274 Pa.Super. 440, 445, 418 A.2d 487, 490 (1980).

Finally, appellant raises for the first time in this Court, where he is represented by new, appellate counsel, several instances of alleged ineffective assistance of trial counsel. Some of these allegations have no arguable merit; others will require an evidentiary hearing.

■ There is no arguable merit in the contention that trial counsel should have moved to quash the information. After a complaint had been signed, appellant could not be found. He was subsequently located at his uncle's home in Alabama. In the meantime, an information had been issued

upon court approval without a preliminary hearing. This procedure was consistent with Pa.R.Crim.P. 231(a). Because the information was properly issued, counsel was not ineffective for failing to move to quash it.

 It has also been alleged that trial counsel was ineffective "for failing to interview and call certain witnesses at trial who would have impeached the victim's credibility." This is inadequate. Appellant has neither identified the witnesses nor disclosed the nature of their contribution to the fact finding process. Counsel will not be deemed ineffective in a vacuum. See: *Commonwealth v. Anderson*, 501 Pa. 275, 287, 461 A.2d 208, 214 (1983) ("appellant must allege more than a bare assertion that counsel failed to interview 'X, Y or Z' and their testimony would have been helpful, for claims of ineffectiveness cannot be abstractly reviewed in a vacuum."); *Commonwealth v. Guest*, 500 Pa. 393, 398, 456 A.2d 1345, 1348 (1983) ("appellant did not make any offer of proof as to the nature of the [uncalled witness'] testimony, nor does the record indicate in what respect the [witness'] testimony could have advanced appellant's cause. In these circumstances, counsel's failure to call the [witness] cannot be deemed to be ineffective assistance."); *Commonwealth v. Murray*, 338 Pa.Super. 580, 585, 488 A.2d 45, 47 (1985) ("where a defendant alleges that his attorney was ineffective in failing to investigate, interview and/or call witnesses in his defense, there must be some demonstration that their testimony would be helpful."); *Commonwealth v. Whyatt*, 327 Pa.Super. 491, 498, 476 A.2d 374, 377 (1984) ("there must be some showing that the witnesses not interviewed were equipped with information which might expand the admissible evidence."). It is not enough merely to allege the existence of "certain witnesses ... who would have impeached the victim's credibility." "Rather, an appellant must also supply a factual basis indicating (1) the identity of the witnesses; (2) that counsel knew of the existence of the witnesses; (3) the material evidence that the witnesses would have provided; and (4) the manner in which the witnesses would have been

helpful to his cause." *Commonwealth v. Torres*, 329 Pa. Super. 58, 68, 477 A.2d 1350, 1355 (1984). See also: *Commonwealth v. Bradford*, 339 Pa.Super. 215, 223, 488 A.2d 628, 632 (1985). This appellant has failed to do. We will not remand for an evidentiary hearing merely because of a general, nonspecific averment that trial counsel should have interviewed or subpoenaed unidentified witnesses. See: *Commonwealth v. Cottman*, 327 Pa.Super. 453, 460, 476 A.2d 40, 43–44 (1984); *Commonwealth v. Blackwell*, 312 Pa.Super. 117, 122, 458 A.2d 541, 544 (1983). See also: *Commonwealth v. Sherard*, 483 Pa. 183, 193–194, 394 A.2d 971, 977 (1978).

 Lastly, appellant argues that trial counsel was ineffective for allowing the jury to learn (1) that he had a criminal record and had served time in jail; (2) that he was known to carry a knife or a gun; (3) that he had beaten and stabbed the victim on earlier occasions; and (4) that he had shot her in the mouth in 1980. These facts were elicited during defense cross-examination of Commonwealth witnesses. The facts elicited were arguably prejudicial to the defense. See: *Commonwealth v. Mitchell*, 314 Pa.Super. 364, 367, 460 A.2d 1182, 1183–1184 (1983); *Commonwealth v. Glasco*, 298 Pa.Super. 189, 192–194, 444 A.2d 724, 726 (1982), *aff'd*, 503 Pa. 124, 468 A.2d 1095 (1983). See also: *Commonwealth v. Witherspoon*, 481 Pa. 321, 327–328, 392 A.2d 1313, 1316–1317 (1978); *Commonwealth v. Gray*, 339 Pa.Super. 385, 389–390, 489 A.2d 213, 215–216 (1985). Accord: *Commonwealth v. Garvin*, 335 Pa.Super. 560, 566, 485 A.2d 36, 39 (1984) (en banc). This Court, however, will not hold counsel ineffective without an evidentiary hearing at which the reasons for his trial tactics may be explained. See: *Commonwealth v. Grant*, 329 Pa.Super. 189, 195–196, 478 A.2d 26, 30 (1984); *Commonwealth v. Murray*, 320 Pa.Super. 77, 79, 466 A.2d 1070, 1071 (1983); *Commonwealth v. Fink*, 317 Pa.Super. 171, 174, 463 A.2d 1140, 1141 (1983). Whether counsel will thereafter be deemed ineffective will, at least in the first instance, be for the trial court to determine.

For the foregoing reason, we will vacate the judgment of sentence, at least for the time being, and remand for an evidentiary hearing to determine whether there were reasons calculated to serve appellant's best interests for eliciting these arguably prejudicial facts. If such reasons exist and the court finds counsel constitutionally effective, the sentences may be reimposed. If the court determines that trial counsel was constitutionally ineffective, a new trial must be granted.

The judgment of sentence is vacated, and the matter is remanded for an evidentiary hearing consistent with the foregoing opinion. Jurisdiction is not retained.