535 A.2d 157

**COMMONWEALTH of Pennsylvania**

v.

**Joseph FLIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 29, 1987.

Filed Dec. 21, 1987.

David S. Shrager, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and JOHNSON and MONTGOMERY, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Allegheny County. We affirm.

Appellant, Joseph Flis, was charged with a single count of arson under 18 Pa.C.S. § 3301(a)(1)(i) for allegedly starting a fire on the porch at 508 McClintock Street, Pittsburgh. In so doing, appellant recklessly placed Laura Flis, his sister, in danger of death or bodily injury. On December

10, 1986, appellant proceeded to trial before a jury with the Honorable Robert E. Dauer presiding.

The victim, Laura Flis, testified as to the events she perceived on the night of the alleged arson. She stated that she was looking out the window of her sister's house where she was living at the time, waiting for the arrival of her boyfriend. At about 12:30 a.m., Laura heard rustling noises outside. She looked out the window and saw a shadow. She testified that a person then walked towards the fence from the neighboring yard in a hunched-over manner. At that point she saw the person jump over the fence and approach the side of the house. When the individual entered upon the area of the yard illuminated by the house light, Laura recognized him as her brother. She then saw her brother toss a lighted match onto a sheet on the porch causing the sheet to go up in flames.

In his defense, appellant testified that he had been at home at 541 Ridgewood Street with his father, Adolf Flis, at the time of the arson. Adolf Flis testified likewise.

Five weeks before the arson, the appellant had been stabbed by his sister, Laura Flis, at 541 Ridgewood Street where she had resided at the time. Based on this stabbing, the appellant filed aggravated assault charges against his sister. A preliminary hearing was scheduled for two days after the arson. At the appellant's trial, Laura Flis and the appellant gave varying accounts of how the stabbing occurred. Buttressing his defense, the appellant contended that Laura Flis's identification of him as the perpetrator of the arson was an attempt to get even with the appellant for filing aggravated assault charges against her. In addition, appellant testified that because of his stab wound, he was physically unable to hunch over and walk or jump a fence as Laura Flis testified she saw the individual who set the fire do.

The jury found Joseph Flis guilty of the arson charge. A post-verdict motion for new trial was filed and denied. Subsequently, appellant was sentenced to a term of impris-

onment of not less than five nor more than ten years. This appeal followed.

Appellant presents three issues for our review: (1) whether the trial court erred in refusing to allow relevant and material testimony from Adolf Flis pertaining to the victim's motive for falsely accusing the appellant; (2) whether trial counsel was ineffective in three aspects, namely: (a) in failing to call known medical witnesses on behalf of the appellant to establish his physical abilities at the time of the alleged arson; (b) in failing to object to the introduction of prior criminal conduct or in the alternative in failing to file a motion to restrict the use of such testimony; and (c) in failing to object to questions by the prosecutor pertaining to a matter that the trial court had ruled was immaterial and irrelevant; and (3) whether the trial court erred by admitting opinion testimony regarding appellant's drug addiction and intoxication.

The appellant's first issue pertains to the court's refusal to allow his trial counsel to question his father, Adolf Flis, about the stabbing incident. In an oral pre-trial motion, the Commonwealth moved to exclude all references to the stabbing incident. The motion was denied. At trial, Laura Flis testified to her version of the stabbing. She explained that on several occasions her brother, the appellant, had threatened her with bodily harm and threatened to have sex with her. To prevent the appellant from entering her room, she installed a lock outside her door and a latch inside. On the day of the stabbing incident, June 7, she was in her room talking on the phone to a friend when the appellant started yelling and shouting obscenities at her. Subsequently, according to Laura, he locked her in her room from the outside. She asked her friend on the phone to call her boyfriend to come over and help her. When Laura's boyfriend and her father arrived at the house, the appellant unlocked Laura's door, but threatened to stab and push her down the stairs if she attempted to leave the room. Laura emerged from the room holding a steak knife for protection, screaming at her brother. When he turned around, she saw

something shiny in his hand and thinking it was a knife, stabbed him.

The appellant, in turn, testified that the incident was unprovoked. He stated that his sister had had a complete change in attitude in the weeks preceding the incident. She neglected her appearance, and ignored anyone who said anything to her in the house. He further recounted that on the day of the stabbing, he had merely informed his sister that her boyfriend had arrived and that if she wanted to see him she should go outside. In response to this notice, the appellant testified, Laura Flis emerged from her room yelling about people telling her what to do and then when he turned to enter his room, she stabbed him.

On direct examination of Adolf Flis, the appellant's trial counsel attempted to question him about his recollection of the stabbing incident. The Commonwealth objected to the questioning on the ground that any further testimony on the stabbing incident would be irrelevant. In response, the appellant's trial counsel argued that because of the discrepancies in the stories regarding the stabbing, the testimony of the father, Adolf Flis, would go to the issue of credibility, a key issue in the case. However, the appellant's trial counsel failed to present an offer of proof as to what Mr. Flis's version of the stabbing incident would reveal. Subsequently, the trial court agreed with the appellee that the testimony would be irrelevant and sustained the Commonwealth's objection. In ruling on this issue in response to the appellant's post-trial motion, the trial court concluded that Adolf Flis's testimony concerning the stabbing incident was extrinsic evidence which would have been collateral and irrelevant under the circumstances.

It is well-established law in this Commonwealth that rulings on the relevancy of evidence are controlled by the discretion of the trial court and will only be reversed by an appellate court for abuse of that discretion. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 445, 467 A.2d 615, 621 (1983). In *Commonwealth v. Stewart*, 461 Pa. 274, 336 A.2d 282 (1975), the court articulated a two-step

analysis required for determining the relevancy of evidence offered at trial: first, it must be determined if the inference sought to be raised by the evidence bears upon a matter at issue in the case, and second, the court must decide whether the evidence renders the desired inference more probable than it would be without the evidence. *Id.*, 461 Pa. at 278, 336 A.2d at 284.

■ The appellant contends that Adolf Flis's testimony regarding the stabbing would have served to demonstrate a motive for Laura Flis's accusation of arson against the appellant and to impeach her credibility. The question of whether Laura Flis's identification of the appellant as the arsonist was motivated by feelings of ill will caused by the stabbing incident certainly bears upon the critical issue in this case—the appellant's guilt or innocence. Thus, the stabbing incident is an important matter here, and testimony pertaining to it is relevant. Moreover, if Laura Flis's credibility could be shaken by the corroboration of the appellant's account of the stabbing and the contradiction of hers, the appellant's case would undoubtedly be strengthened. Her testimony must be perceived as credible to find the appellant guilty of the arson charge.

However, the second step of the relevancy analysis requires a determination that the evidence renders the desired inference more probable than it would without the evidence. Since Adolf Flis did not testify regarding the stabbing and since appellant's trial counsel did not present an offer of proof, it is difficult to surmise whether his testimony would have completely corroborated either the appellant's or Laura Flis's version of the incident, corroborated part of one version and part of the other, or merely complicated matters by introducing a completely new version of the details of the incident. Appellee contends the few remarks Adolf Flis did make regarding the incident suggest his testimony would not have corroborated appellant's version of the story. When asked if he heard his son describe the stabbing incident during the trial, Adolf Flis stated, "Yes, but it wasn't like that all the way through the story." This

statement by Adolf Flis does seem to indicate that his testimony would not have completely corroborated either version of the incident that was presented at the trial. If so, it would have done little to shake Laura Flis's credibility in relation to the appellant's, or to bolster the probability that Laura Flis's identification of the accused as the arsonist was prompted by ill will. Moreover, since the testimony of the appellant as well as of Laura Flis revealed that she stabbed the appellant, that assault charges were filed against her for the incident, and that a preliminary hearing on the charges was scheduled for two days after the day of the arson, evidence necessary to support an inference of ill will on Laura Flis's part in identifying the appellant was heard by the jury despite the exclusion of Adolf Flis's testimony on the stabbing. Thus, given the questionable ability of Adolf Flis's testimony to aid the appellant's case, the discretion of the trial court must remain controlling in this case.

The appellant next raises three claims of ineffectiveness of counsel. The courts of this Commonwealth measure claims of ineffectiveness by first determining whether the issue underlying the charge of ineffectiveness is of arguable merit. If the underlying issue is found to be of arguable merit, we must then determine whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Pierce*, 515 Pa. 153, 158–159, 527 A.2d 973, 975 (1987) (citations omitted). In addition to these two determinations which must be resolved in the appellant's favor, the appellant must demonstrate that counsel's ineffectiveness caused him prejudice and affected the outcome of the trial. *Id; Commonwealth v. Buehl*, 510 Pa. 363, 378, 508 A.2d 1167, 1174 (1986).

With this analysis in mind, we proceed to examine the appellant's first claim of ineffectiveness of counsel, namely that his trial counsel was ineffective in failing to call known medical witnesses on behalf of the appellant to

establish his physical inabilities at the time of the alleged arson.

The appellant argues that since his testimony revealed that his stab wound made it physically impossible for him to hunch over and walk or to jump a fence, the same acts Laura Flis stated the arsonist performed, testimony of the appellant's attending physician and nurses would have been extremely probative in establishing and bolstering the appellant's credibility. While this argument is correct, the appellant has not met his burden of offering a positive demonstration or offering to prove at an appropriate hearing that these witnesses' testimony would have actually been helpful to the defense by confirming the appellant's statements regarding his physical capabilities at the time of the arson. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981); *Commonwealth v. Williams,* 344 Pa.Super. 493, 503, 496 A.2d 1213, 1218 (1985); *Commonwealth v. Nelson,* 311 Pa.Super. 1, 14, 456 A.2d 1383, 1390 (1983); *Commonwealth v. Rivera,* 309 Pa.Super. 33, 38, 454 A.2d 1067, 1070 (1982). The burden of proving counsel's ineffectiveness rests on the party alleging it. *Commonwealth v. Wallace,* 347 Pa.Super. 2487, 251, 500 A.2d 816, 818 (1985). This court cannot make a finding of ineffectiveness of counsel on the assumption that a physician's or nurse's testimony would have revealed what the appellant has suggested it would. Therefore, the appellant's first claim of ineffectiveness of counsel is without merit.

Appellant next claims his trial counsel was ineffective in failing to object to the introduction of prior criminal conduct or in the alternative in failing to file a motion *in limine* to restrict the introduction of such testimony. Our supreme court has recently modified the rule on the introduction of prior convictions for the purpose of impeaching the credibility of witnesses. Under the old rule which was enunciated in *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973) and *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), the trial judge retained discretion in determining

the admissibility into evidence of prior convictions involving dishonesty or false statement.

In *Commonwealth v. Bighum*, the supreme court limited the admissibility of prior convictions to "crimes involving dishonesty or false statement." *Bighum*, 452 Pa. at 566, 307 A.2d at 262. As to those convictions of crimes involving dishonesty or false statement, the court defined a series of considerations which the trial judge was to take into account in determining their admissibility. *Id.*, 452 Pa. at 567, 307 A.2d at 263. In *Commonwealth v. Roots*, the court more succinctly defined the rule established in *Bighum* by requiring trial courts to consider the following factors in determining the admissibility of prior convictions for impeachment purposes:

> (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecutor's case and the prosecutor's need to resort to the evidence ...; and (5) the existence of alternative means of attacking the defendant's credibility.

*Roots*, 482 Pa. at 39–40, 393 A.2d at 367.

The new rule as stated in *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987), revises *Bighum* and *Roots* "in favor of more concrete guidelines" for determining the admission of prior convictions. According to this new rule, evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. *Randall*, 515 Pa. at 415, 528 A.2d at 1329.

■ It is apparent that if the propriety of admitting the appellant's convictions is reviewed under the old rule, a discussion of the factors to be considered in determining the admissibility of prior convictions must ensue; whereas, if their admissibility is reviewed under the new rule, their admission was clearly unobjectionable since the convictions were within the ten-year limit and "burglary is a crime connoting 'dishonesty' by any definition." *Commonwealth v. Bailey*, 354 Pa.Super. 51, 511 A.2d 180, 182 (1986) (quoting *Commonwealth v. Amos*, 445 Pa. 297, 306, 284 A.2d 748, 752 (1971)). Thus, we must determine whether the new rule stated in *Randall* is to be applied retroactively.

Three approaches have been utilized by the supreme court in determining the propriety of applying a new law retroactively. In *Commonwealth v. McCormick*, 359 Pa. Super. 461, 519 A.2d 442 (1986), these three approaches were succinctly summarized as follows:

The common law approach set forth in *U.S. v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801) is that an appellate court must apply the law as it exists at the time of its decision. Therefore, new decisions always have retrospective application to cases pending at the time of the decision. However, a modified form of the common law approach creates an exception to this rule where the new rule is a "clear break with the past" or where there are constitutional limitations. *U.S. v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). Alternatively, a court can selectively apply a decision retroactively. Under the selective approach, the court considers: 1) the purpose to be served by the new standard; 2) the extent of reliance by law enforcement authorities on the old standard; and 3) the effect on the administration of justice. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Where the purpose of the new standard affects the truth finding function, thereby raising serious questions about the accuracy of prior guilty verdicts, the new rule has been given complete retroac-

tive effect. *Williams v. U.S.*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

Our review of the recent case law confirms the conclusion reached by the *McCormick* court that although each of these three approaches has been utilized by the supreme court in recent years, it is unclear whether one approach is to be followed above the others. *McCormick*, 359 Pa.Super. at 473, 519 A.2d at 247–48; *see also Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180 (1986) (plurality opinion) (common law approach utilized); *Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986) (common law and selective approach followed); *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985) (modified common law approach applied); *Commonwealth v. Geschwendt*, 500 Pa. 476, 454 A.2d 991 (1985) (plurality opinion) (modified common law and selective approach followed); *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983) (modified common law approach employed); *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980) (selective approach utilized). Consequently, following the lead of the court in *McCormick*, we will proceed to determine the propriety of retroactively applying the *Randall* rule under all three approaches.

First, under the common law approach, since the supreme court's decision in *Randall* did not specifically declare the ruling to have a prospective effect only, the *Randall* rule regarding the admissibility of prior convictions would be properly applied. Second, employing the modified common law approach, where retroactive application is given to cases pending at the time of the decision except where the new rule is a clear break with the past or where there are constitutional limitations, we find there is no clear break with the past since the *Randall* rule simply modifies an old rule. *Randall*, 515 Pa. at 415, 528 A.2d at 1329. Moreover, there is no constitutional limitation to retroactively applying *Randall* since *Randall* did not create any new rights for the appellant and, as such, none of his reliance interests

would be violated by its application to this appeal. *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985).

Last, we will apply the selective approach which requires consideration of the following factors: (1) the purpose to be served by the new rule; (2) the extent of reliance by law enforcement authorities on the old rule; and (3) the effect on the administration of justice. We note the supreme court stated the purpose of the *Randall* rule is to afford more certainty to trial judges' rulings on the admissibility of prior convictions so there will be fewer instances where an appellate court acting on a record overturns a trial judge's decision. *Randall*, 515 Pa. 514, 1528 A.2d at 1328. The appellant is requesting this court to do exactly what *Randall* is designed to prevent. Next, any reliance by law enforcement officers on the old rule is minimal. Since the old rule required trial courts to weigh five factors in determining the admissibility of prior convictions, there was little, if any, certainty provided by the rule. The *Randall* rule, on the other hand, provides a bright-line rule upon which law enforcement authorities can depend. Finally, applying *Randall* retroactively will not impede the administration of justice since rather than increasing the number of appeals disputing the admissibility or exclusion of prior convictions, appellants may be inspired to forego such appeals since a retroactive application of the new rule will make the outcome of such an appeal almost certain.

In summary, our employment of all three approaches to determine the propriety of applying *Randall* retroactively reveals no reason to refrain from doing so. Appellant's convictions for burglary were properly admitted into evidence by the trial court under the *Randall* rule. Therefore, appellant's trial counsel cannot be found ineffective for failing to object to their admission; even if a new trial were ordered and the admissibility of the convictions was objected to, the convictions would still be properly admitted into evidence. Consequently, we find no merit in the appellant's second claim of ineffectiveness of counsel.

█ Lastly, appellant argues trial counsel was ineffective for failing to object when the prosecutor cross-examined Adolf Flis regarding the appellant's glue-sniffing habits in a line of questioning which pertained solely to the events of the stabbing. Appellant claims trial counsel's failure to object to this subject of cross-examination prejudiced him in two respects.

Appellant first argues he suffered prejudice because Mr. Flis's responses to these questions of the prosecutor painted him as a "glue-sniffing drug addict." We disagree. Before Adolf Flis even took the stand to testify, the appellant's habit of glue sniffing had already been introduced into evidence by Laura Flis's testimony. When questioned about why she believed the appellant would carry out his threats against her, she answered it was because he was on drugs and sniffed glue. In addition, while testifying about the stabbing, Laura Flis stated that in her opinion the appellant had been sniffing glue that day. Moreover, her testimony indicated that when the appellant sniffed glue he behaved more aggressively. Mr. Flis's testimony, rather than corroborating or adding to this depiction of the appellant's glue sniffing habits, contradicted and deflated it by disclosing that the appellant only sniffed glue off and on, and even when he did, his behavior was not troublesome.

Appellant's second assertion of prejudice is that Adolf Flis's testimony tended to corroborate Laura Flis's description of the stabbing incident. Thus, the appellant argues, the Commonwealth was afforded the opportunity at trial to strengthen its case by eliciting testimony from Mr. Flis about the stabbing while the appellant was not given that opportunity. Again, we do not find the appellant's argument of prejudice persuasive. The prosecutor's questions about the appellant's glue-sniffing habits did not refer to a specific date, but instead inquired into the habit in general. When the prosecutor began reciting a question which may have been designed to obtain information about the appellant's habit and behavior on the day of the stabbing or the arson, the appellant's trial counsel voiced an objection which

the trial court sustained. Thus, the Commonwealth was not given the opportunity to delve into the events of the stabbing any more than the appellant was. Since we do not find the appellant's demonstrations of prejudice to be convincing, we must dismiss appellant's last claim of ineffectiveness of counsel.

■ The third and final issue raised by the appellant, whether the trial court erred by admitting into evidence opinion testimony regarding the appellant's drug addiction and intoxication, was not raised in his post-trial motions. This issue, therefore, was not preserved for review by this court. Only those issues specifically raised in post-verdict motions are preserved for our review. *Commonwealth v. Beckham*, 349 Pa.Super. 430, 433, 503 A.2d 443 (1986).

Based on the foregoing discussion, the judgment of sentence entered in the Court of Common Pleas of Allegheny County is affirmed.