539 A.2d 829

**COMMONWEALTH of Pennsylvania**

v.

**Craig Steven THOMAS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 24, 1987.

Filed Feb. 24, 1988.

Reargument Denied April 19, 1988.

350

Eileen Courtney, Wayne, for appellant.

Ann A. Osborne, Assistant District Attorney, Radnor, for Com., appellee.

Before CIRILLO, President Judge, and WIEAND and WATKINS, JJ.

WIEAND, Judge:

Craig Steven Thomas was tried by jury and was found guilty of robbery[1] and possession of an instrument of crime.[2] Post-trial motions were denied, and Thomas was sentenced to serve a term of imprisonment for not less than six years nor more than twelve years. On direct appeal,[3]

1. The jury found that Thomas had committed a robbery which was both a felony of the first degree and a felony of the third degree. For sentencing purposes, however, the robberies were held to merge. See: 18 Pa.C.S. § 3701(a)(1)(ii), (v).

2. 18 Pa.C.S. § 907.

3. A timely appeal was not filed, but the trial court allowed an appeal nunc pro tunc. While the appeal was pending, appellant also filed a P.C.H.A. petition. This Court granted a temporary remand so that the P.C.H.A. petition could be heard. Following an evidentiary hearing, the P.C.H.A. petition was denied.

Thomas argues numerous issues which we will consider seriatim.

On June 20, 1985, while walking on Main Street in Trainer, Delaware County, Roberta Wilkerson was approached from behind by a black male who, at gunpoint, took her purse and a radio which she was carrying. She described the robber as a black male, slender, about 5' 7" and wearing light clothes. She could not otherwise identify the robber. Lorraine and Amanda Voshelle witnessed the robbery and gave general descriptions of the robber. Although their descriptions generally matched Thomas's description, neither of them specifically identified Thomas as the robber. Paul Barnard, while driving on Main Street, observed a black male run in front of his car carrying a radio and pocketbook. Barnard saw the man jump into the passenger side of a car, which Barnard followed into a dead end street. There, as the vehicle retreated, Barnard was able to observe the man for a period of several seconds. Barnard also made notes of the description of the man, who was wearing a wide brimmed straw hat, a white shirt, and blue shorts. He returned to the scene approximately one hour later and there identified Thomas, who was then seated in the rear of a police vehicle. Barnard subsequently selected Thomas from a lineup and made a positive identification at trial.

In *Commonwealth v. Whiteman*, 336 Pa.Super. 120, 485 A.2d 459 (1984), this Court said:

'Sufficiency of the evidence and weight of the evidence are discrete inquiries.... In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt....

A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be

granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion.... The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.'

*Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1229–30 (1984); *accord, Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983) (allocatur denied); *see also Commonwealth v. Miller*, 303 Pa.Super. 504, 450 A.2d 40 (1982).

*Id.*, 336 Pa.Superior Ct. at 124–125, 485 A.2d at 461–462.

 The evidence in the instant case was clearly sufficient to sustain the verdict of the jury. Therefore, counsel was not ineffective for failing to submit a written motion for a directed verdict. Counsel is not required to perform a useless act or file a meritless motion. *Commonwealth v. Albrecht*, 510 Pa. 603, 626, 511 A.2d 764, 776 (1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987); *Commonwealth v. Stoyko*, 504 Pa. 455, 472, 475 A.2d 714, 723 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984); *Commonwealth v. Cope*, 359 Pa.Super. 140, 144, 518 A.2d 819, 820 (1986). Similarly, counsel was not ineffective for failing to seek a new trial on the ground that the verdict was contrary to the weight of the evidence. Such an averment would also have been lacking in merit.

As a part of its case against appellant, the Commonwealth offered into evidence a gold pocket watch engraved with a locomotive which, at the time of the robbery, had been left behind with the victim. When appellant testified in his own behalf, he denied ownership and any knowledge of the watch. On rebuttal, the Commonwealth offered Officer James Magaw, who testified that on the day following the robbery appellant's parents had inquired regarding a pocket watch. The trial court initially sustained an objec-

tion to statements made by appellant's parents but allowed the witness to testify that following the parents' inquiry he went in search of a gold pocket watch with a railroad engine engraved upon it. Such a watch, he said, had been retrieved from the victim of the robbery. Subsequently, he testified that appellant's parents had told him that appellant was the owner of the watch.

More specifically, the following is what occurred during the direct examination of Magaw:

Q. Directing your attention to the day following the robbery in this case, or the incident in this case, which would be, I believe June 21st of this past year, 1985, did you become involved with the return of property to the families of Debra Jones and Craig Thomas?

A. Yes, I did.

Q. Did you come into contact with individuals identifying themselves as relatives and indeed parents of Craig Thomas?

A. Yes, I did.

Q. Did—were—were you in contact with them for the purpose of returning property?

A. Yes, I was.

Q. As a result of that—of any conversation with them, what, if anything, did you do?

. . . . .

A. I—after speaking with those individuals, I contacted Officer Griffin, who was the officer in charge of the case, I received from him a key to a—to a locker, which—that's where the evidence was held for the case. I then returned to the family of Debra Jones, a camera, I believe a coat, some cash, mostly—mostly personal effects, personal items. For Craig Thomas, there was a—a problem with a pocket watch. The family said that he had with him a pocket watch and that we had taken it ...

Appellant objected to this line of questioning on grounds that it was irrelevant and constituted hearsay evidence. The trial court sustained the objection in part and disallowed any testimony of the statements made by appellant's

parents. However, the court allowed Magaw to testify to what he did in response to the information narrated by the parents.

Thus, Officer Magaw testified as follows:

Q. Officer Magaw, as a result of your contact with these individuals, did you search for anything?

A. Yes, I did.

Q. Where did you search?

A. I searched the evidence locker and the envelopes for a ...

Q. All right.

A. ... pocket watch.

Q. Specifically what were you looking for?

A. A gold pocket watch which was identified to me as one with a ...

\* \* \* \* \* \*

MR. JOHNSON [Appellant's Attorney]:

Objection.

BY MR. GOLDSTEIN [the District Attorney]:

Q. What were you looking for specifically?

\* \* \* \* \* \*

MR. JOHNSON:

Objection.

THE COURT:

Yes, just—just that he was looking for a pocket watch. Go ahead.

THE WITNESS:

Gold pocket watch.

THE COURT:

What did you do, offi—what did you do, officer?

THE WITNESS:

I—I looked in the evidence locker and—and envelopes for a gold pocket watch with an engine engraved ...

THE COURT:

All right. What else ...

THE WITNESS:

... a railroad engine engraved on the ...

MR. JOHNSON:

Objection ...

THE WITNESS:

... on the back of it.

Magaw testified further that he had found such a gold pocket watch in the possession of the victim. Appellant cross-examined Magaw regarding his written report and the fact that nothing therein had suggested who it was to whom the watch belonged. On redirect examination, the trial court permitted the Commonwealth to ask Officer Magaw: "Do you know whether or not it was represented to you that it was the Defendant's watch?" Magaw then answered: "Yes, as I said, I was advised by that lady back there that the watch belonged to the Defendant." This was the only evidence establishing a connection between appellant and the watch found at the scene of the robbery.

▮ Appellant argues that the trial court committed reversible error by allowing the Commonwealth to prove his ownership of the watch by inadmissible hearsay evidence. We are constrained to agree.

In *Commonwealth v. Whiting*, 358 Pa.Super. 465, 517 A.2d 1327 (1986), this Court said that

> [h]earsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Cassidy*, 315 Pa.Superior Ct. 429, 433, 462 A.2d 270, 272 (1983).
>
> > When a statement is offered in evidence to prove the truth of a fact asserted therein, the speaker's credit and the circumstances of the utterance become basic to a proper evaluation of the statement. Therefore, the hearsay rule generally excludes such evidence unless the speaker is on hand to personally testify.
>
> *Commonwealth v. DiSilvio*, 232 Pa.Superior Ct. 386, 391, 335 A.2d 785, 787–88 (1975). The rationale behind the rule extends to indirect as well as direct attempts to introduce out-of-court statements. *Commonwealth v. Farris*, 251 Pa.Superior Ct. 277, 282, 380 A.2d 486, 489

(1977). Thus, "[i]f the apparent purpose of offered testimony is to use an out-of-court statement to evidence the truth of facts stated therein, the hearsay objection cannot be obviated by eliciting the purport of the statements in indirect form." *Id.*, 251 Pa.Superior Ct. at 282–83, 380 A.2d at 489 (quoting *McCormick on Evidence* § 249, at 593–94 (Cleary ed. 1972)).

*Id.*, 358 Pa.Superior Ct. at 478–479, 517 A.2d at 1334. The issue of indirect hearsay was considered by this Court in *Commonwealth v. Farris*, 251 Pa.Super. 277, 380 A.2d 486 (1977). In that case, the issue was whether the hearsay rule had been violated by testimony of a police officer who told a jury what he had done as a result of that which a third person had told him. In resolving the hearsay issue, the Court said:

> The Commonwealth argues that since "the statement itself was never read to the jury ... Detective Aiken's testimony ... does not constitute hearsay." ... According to the Commonwealth, "Moore's statement ... was merely referred to as part of the investigation...." ... The lower court accepted this argument, saying that "Detective Aiken merely described the steps in his investigation leading to the arrest of Emanuel Farris." ...

> To regard the testimony in this manner is disingenuous. By no means did the detective "merely describe[ ]" his investigation; what he did—that is, what the testimony elicited from him by the assistant district attorney did— was to tell the jury: "I interrogated Gary Moore, and he told me that one of the men involved in the robbery was Emanuel Farris, and so I arrested Farris."

> There can be little doubt—we have none—that this is just what the jury understood the detective to say. Common sense tells us so: a jury is not likely to make nice legal distinctions between a flat-out narrative ("Moore told me that....) and an oblique narrative ("as a result of what Moore told me, I did ...).

. . . . .

There can also be little doubt—and again, we have none—that the assistant district attorney intended to get across to the jury that Moore had identified appellant as involved in the robbery. That was the only reason to question the detective as he was questioned. Sometimes, to be sure, it will be relevant to ask a law enforcement officer to "describe the steps in your investigation," for example, when the issue is whether the officer had reasonable cause to get a search warrant or to make an arrest. Here, however, the facts that the detective had taken "a statement" from Moore, and had then "[a]s a result of" that statement arrested appellant, were of no possible relevance—except to show that Moore had told the detective that appellant was involved in the robbery.

Had the detective testified flat-out, "Moore told me that one of the men involved was Farris," it would be clear beyond reasonable argument that the testimony would have been hearsay: it would have been an assertion by someone not in court (Moore), offered for its truth (that one of the men was Farris), and thus depending for its value upon the credibility of the out-of-court asserter. See generally McCormick on Evidence § 246 (Cleary ed. 1972). The Commonwealth should not be permitted to evade this principle by having the detective testify obliquely rather than flat-out.

Id., 251 Pa.Superior Ct. at 281–282, 380 A.2d at 488–489.

In the instant case, the Commonwealth was permitted to show by direct and indirect hearsay evidence that appellant's parents had told the police that appellant owned a gold watch, with a locomotive engraved thereon, which the parents believed appellant had been wearing prior to the time when he was taken into custody. In this manner the Commonwealth was able to connect appellant to the watch found at the scene of the robbery. This was error; the evidence was received in violation of the hearsay exclusionary rule.

Appellant's remaining contentions pertain to the alleged ineffectiveness of his counsel. He had been represented

prior to trial by the office of the public defender and at trial by counsel privately retained. Present counsel was appointed after post-trial motions had been denied and sentence imposed. It was at the request of present counsel that this Court remanded for an evidentiary hearing.

In examining claims of ineffective assistance of counsel, "we must first determine if the underlying issue is of arguable merit." *Commonwealth v. Thomas,* 363 Pa.Super. 348, 352, 526 A.2d 380, 381 (1987). If, and only if, the underlying issue is found to be of arguable merit may we proceed to the second inquiry which is "whether the course of action chosen by counsel had some reasonable basis designed to effectuate the client's interest." *Commonwealth v. Thomas, supra,* 363 Pa.Superior Ct. at 352, 526 A.2d at 382. Finally, the appellant must additionally establish that counsel's conduct so prejudiced his case that he was deprived of a fair trial. *Commonwealth v. Thomas, supra.* See also: *Commonwealth v. Cope, supra* 359 Pa.Super. at 144, 518 A.2d at 820–821; *Commonwealth v. Pierce,* 345 Pa.Super. 324, 326–329, 498 A.2d 423, 424–426 (1985), *affirmed,* 515 Pa. 153, 527 A.2d 973 (1987).

Appellant's first claim of ineffective assistance is based upon the failure of counsel to file a pre-trial motion to suppress the identification testimony given by Paul Barnard. For identification testimony to be suppressed, it must be determined that "the identification procedure was so suggestive and conducive to irreparable mistaken identity so as to deny the accused due process." *Commonwealth v. Thomas, supra,* 363 Pa.Superior Ct. at 352, 526 A.2d at 381. See also: *Commonwealth v. Voss,* 333 Pa.Super. 331, 482 A.2d 593 (1984); *Commonwealth v. Williams,* 323 Pa.Super. 512, 470 A.2d 1376 (1984). This Court has stated further that:

> The essential criteria in determining whether or not evidence of pre-trial identification is admissible is its reliability under all of the circumstances disclosed by the record. The question for the suppression court is whether the challenged identification has sufficient indicia of reliabili-

ty to warrant its admission even though the confrontation procedure may have been suggestive.

*Commonwealth v. Thompkins,* 311 Pa.Super. 357, 362–363, 457 A.2d 925, 928 (1983) (citation and footnote omitted).

■ The factual context in which Barnard identified appellant was that of an on-the-scene identification made approximately an hour after he had viewed the perpetrator running from the place where the robbery had occurred. Such identifications are held generally to be reliable and, thus, not subject to suppression on constitutional grounds. *Commonwealth v. O'Neal,* 321 Pa.Super. 323, 328, 468 A.2d 500, 503 (1983). The Supreme Court has spoken of such on-the-scene identifications as follows:

> Evidence of identification should not be received at trial if the circumstances of the pre-trial confrontation were so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification. However, absent some special elements of unfairness, we do not believe that prompt on-the-scene confrontations fall within this ambit of suggestiveness. We find support for this position in the opinions of the federal courts which hold that an in-custody-at-the-scene identification made shortly after the commission of the crime does not violate due process.

*Commonwealth v. Turner,* 454 Pa. 520, 523, 314 A.2d 496, 498 (1974) (citations omitted). See also: *Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985); *Commonwealth v. Allen,* 287 Pa.Super. 88, 429 A.2d 1113 (1981); *Commonwealth v. Jones,* 231 Pa.Super. 323, 331 A.2d 788 (1974). There were no special elements of unfairness in the identification procedure used by police in the instant case. Barnard was able to obtain a good look at the perpetrator, having had an unobstructed view from a distance of less than ten feet and for a period of five to ten seconds. Barnard testified that he had no doubt about the identification, and he was later able to identify appellant in a lineup and at trial. The mere fact that appellant was sitting alone in the back of a police car when Barnard identified him did not constitute a special element of unfairness. See: *Commonwealth v. Allen, supra* 287 Pa.Super. at 104, 429 A.2d

at 1121. As for the discrepancy between Barnard's notes which described the clothing worn by the robber and the descriptions given by other witnesses, this was a matter of credibility for the jury to decide and not adequate reason to suppress Barnard's testimony. We conclude, therefore, that there would have been no merit in a petition to suppress Barnard's identification. Counsel will not be deemed ineffective for failing to file a meritless pre-trial petition. See: *Commonwealth v. Cope, supra* 359 Pa.Super. at 144, 518 A.2d at 820.

During opening and closing arguments, the prosecuting attorney made the following remarks:

(1) "This Defendant, Craig Steven Thomas, that man over there, that, ladies and gentlemen, is why we are here in Court today." (2/6/86, Trial Transcript at 19).

(2) "I believe, ladies and gentlemen, that they will say that they cannot identify that Defendant, and so he's lucky." (2/6/86, Trial Transcript at 21–22).

(3) "... but we don't know if that Defendant was wearing the same clothes when he was arrested from the time that the act was committed." (2/7/86, Trial Transcript at 172).

(4) "Call them up and tell them a black man jumped into my car and held me—and this is why there's corroboration about the gun,.... (2/7/86, Trial Transcript at 174–175).

(5) "I ask you to come back into this Courtroom and say, Craig Steven Thomas, what you did was wrong. (2/7/86, Trial Transcript at 182).

Appellant argues that his trial counsel was ineffective for not objecting to these remarks on the grounds that they were likely to inflame the passions of the jury and create bias against appellant. Appellant also contends that his counsel was ineffective for failing to raise these allegedly improper remarks in a post-verdict motion seeking a new trial.

"In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation

but, rather, must be considered in the context in which they were made." *Commonwealth v. Williams,* 346 Pa.Super. 456, 459, 499 A.2d 1089, 1091 (1985). See also: *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987); *Commonwealth v. Toledo,* 365 Pa.Super. 224, 529 A.2d 480 (1987); *Commonwealth v. Martin,* 307 Pa.Super. 118, 452 A.2d 1066 (1982); *Commonwealth v. Dozier,* 294 Pa.Super. 249, 439 A.2d 1185 (1982). Moreover, " '[i]t is well settled that comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.' " *Commonwealth v. Chew,* 338 Pa.Super. 472, 484, 487 A.2d 1379, 1385 (1985), quoting *Commonwealth v. Tabron,* 502 Pa. 154, 160, 465 A.2d 637, 639–640 (1983). See also: *Commonwealth v. Carpenter,* 511 Pa. 429, 515 A.2d 531 (1986); *Commonwealth v. Baker,* 511 Pa. 1, 511 A.2d 777 (1986); *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984), *cert. denied,* 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984), *rehearing denied,* 472 U.S. 1033, 105 S.Ct. 3516, 87 L.Ed.2d 644 (1985).

■ In viewing the remarks of the prosecutor in this case, we are unable to conclude that their unavoidable effect was to so prejudice the jury that it was unable to render a fair verdict according to the evidence. On the contrary, after reviewing the challenged remarks in the context of the prosecutor's entire opening and closing arguments, we are led to the conclusion that the prosecutor stayed well "within the ambit of fair comment" and that his remarks were supported by the facts of the case and reasonable inferences to be drawn therefrom. *Commonwealth v. Barren,* 501 Pa. 493, 498, 462 A.2d 233, 235 (1983). See also: *Commonwealth v. D'Amato, supra; Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984); *Commonwealth v. Shain,* 493 Pa. 360, 426 A.2d 589 (1981); *Commonwealth v. Anderson,* 490 Pa. 225, 415 A.2d 887 (1980); *Commonwealth v. Sargent,* 349 Pa.Super. 289, 503 A.2d 3 (1986); *Commonwealth v. Brown,* 332 Pa.Super. 35, 480 A.2d 1171

(1984). Therefore, counsel will not be deemed ineffective for failing to object.

Appellant next argues that trial counsel was ineffective for failing to include in the motion for new trial a claim that the trial court improperly prevented defense exhibits from being sent to the jury. Specifically, appellant argues that defense exhibits D–1, D–2 and D–3, which consisted of Barnard's contemporaneous notes describing the man he saw fleeing the crime scene, should have been permitted to go out with the jury. Appellant's counsel entered these exhibits into evidence at the beginning of his cross-examination of Barnard. The prosecutor objected to this evidence being sent out with the jury, and the trial court ruled that the exhibits would not be permitted to go out with the jury.

■ Decisions as to what exhibits may be taken out by the jury are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Sparks*, 351 Pa.Super. 320, 327–328, 505 A.2d 1002, 1006 (1986); *Commonwealth v. Lybrand*, 272 Pa.Super. 475, 484, 416 A.2d 555, 560 (1979); *Commonwealth v. Merbah*, 270 Pa.Super. 190, 196, 411 A.2d 244, 247 (1979). See also: Pa.R.Crim.P. 1114. To establish an abuse of discretion, appellant must show that the trial court disregarded or misapplied the law or that " 'the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record....' " *Commonwealth v. Jackson*, 336 Pa.Super. 609, 627, 486 A.2d 431, 441 (1984). In the instant case, the trial court did not abuse its discretion. The exhibits, as even appellant concedes, had been used extensively during cross-examination of Barnard; and, therefore, the jury was aware of the contents thereof. He was not prejudiced because the written notes were not also sent into the jury deliberating room. Counsel was not ineffective for failing to contend otherwise in post-trial motions.

Appellant also contends that pre-trial counsel and trial counsel were ineffective for failing to request a bill of particulars, for failing to request pre-trial discovery, for failing to move for suppression of the pocket watch, and for

failing to prepare adequately for trial. As to the failure of counsel to move to suppress the watch, appellant fails to allege any factual basis sufficient to support such a motion. Absent some showing by appellant that an adequate basis existed on which to obtain a pre-trial suppression of the evidence in question, we will not find counsel ineffective. *Commonwealth v. Durah-El*, 344 Pa.Super. 511, 516, 496 A.2d 1222, 1225 (1985).

Appellant failed also to disclose any specific evidence which counsel should have discovered or show how such evidence would have helped his cause. "Such an omission is fatal to the appellant's claim." *Commonwealth v. Stinnett*, 356 Pa.Super. 83, 88, 514 A.2d 154, 157 (1986). Counsel will not be found ineffective in a vacuum, and we will not consider claims of ineffectiveness without some showing of a factual predicate upon which counsel's assistance may be evaluated. See: *Commonwealth v. Silo*, 509 Pa. 406, 411, 502 A.2d 173, 176 (1985); *Commonwealth v. Pettus*, 492 Pa. 558, 563–564, 424 A.2d 1332, 1335 (1981); *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 56, 512 A.2d 1199, 1207 (1986); *Commonwealth v. Scott*, 345 Pa.Super. 86, 91, 497 A.2d 656, 659 (1985); *Commonwealth v. Williams*, 344 Pa.Super. 493, 503, 496 A.2d 1213, 1218 (1985).

■ In support of his claim that both prior counsel were ineffective for failing to prepare adequately for trial, appellant alleges that his counsel failed to see him in prison before trial, failed to prepare him for direct testimony or cross-examination, and failed to discuss trial strategy with him. Appellant bears the burden of proving his counsel's ineffectiveness, for counsel's stewardship is presumed to be effective. *Commonwealth v. Weaver*, 363 Pa.Super. 194, 196, 525 A.2d 785, 786 (1987). The shortness of time which counsel spends in consultation with a defendant does not alone establish ineffective assistance. *Commonwealth v. Smith*, 348 Pa.Super. 81, 95, 501 A.2d 656, 663–664 (1985). See also: *Commonwealth v. Bundy*, 491 Pa. 607, 421 A.2d 1050 (1980); *Commonwealth v. Owens*, 454 Pa. 268, 312 A.2d 378 (1973). Here, appellant's trial counsel testified at

the P.C.H.A. hearing that he had spoken with appellant extensively prior to trial, and the court found counsel's testimony to be credible.

Our own review of appellant's testimony at trial does not suggest that he was unprepared to testify. Appellant offered a plausible explanation for his presence at the crime scene an hour after the commission of that crime. Additionally, his trial counsel extensively cross-examined the Commonwealth's witnesses, especially Barnard, the identification witness. That the jury resolved issues of credibility against appellant does not require a conclusion that trial counsel was unprepared. On the basis of the record before us, we conclude that appellant failed to prove that counsel was unprepared for trial so as to render his assistance constitutionally ineffective.

Our review of the record suggests that appellant received a vigorous and skilled defense from counsel but that he was unfairly prejudiced by the evidentiary ruling which permitted the Commonwealth to use hearsay evidence to establish his ownership of the watch found at the scene of the crime. It is solely for this reason that we reverse and remand for a new trial.

Reversed and remanded for a new trial. Jurisdiction is not retained.