638 A.2d 489

**Gary WATSON, Appellant,**

v.

**CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 1994.

Decided March 2, 1994.

342

James P. McGarrity, for appellant.

E. Jane Hix, Deputy City Sol., for appellee.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Gary Watson (Watson) appeals the order of the Court of Common Pleas of Philadelphia County (trial court) denying his motion for a new trial following an adverse non-jury verdict in his action for reinstatement against the City of Philadelphia (City) pursuant to the Pennsylvania Whistleblower Law.[1]

In November, 1990, Watson, a City civil service custodial worker at Philadelphia International Airport, received an appointment as a probationary municipal guard,[2] a position in the City's Department of Public Property. He was assigned to Philadelphia's City Hall to provide security and assistance to those with business in the building. Shortly after commencing his duties, Watson reported his suspicion that his supervisor, Levi Johnson (Johnson), had misappropriated City property to the Philadelphia Inspector General.[3] Within a week of the initiation of the Inspector General's investigation, Johnson prepared two negative three-month evaluations for Watson. Watson, however, refused to acknowledge the evaluations and they had yet to be placed in his personnel file when Johnson was arrested by Philadelphia Police and charged with misappropriating City property. Following Johnson's arrest, the Deputy City Commissioner for Public Property, Charles Finney (Finney), ordered that Watson be rated satisfactorily with the endorsement: "In the three months that you have worked in this department your performance has been excellent under demanding circumstances."

Over the next three months, Watson developed suspicions of wrongdoing by Finney and brought them to the attention of

1. Act of December 12, 1986, P.L. 1559, No. 169, *as amended,* 43 P.S. §§ 1421–1428.

2. Pursuant to the Civil Service regulations of the City of Philadelphia, a probationary employee will not receive a permanent appointment following completion of his six-month probationary period if it is determined that he is "unable or unwilling to perform his duties satisfactorily or that his habits and dependability do not merit his continuance in the City service." Philadelphia Civil Service Regulations § 14.04; *Wishnow v. City of Philadelphia,* 118 Pa.Commonwealth Ct. 289, 545 A.2d 417 (1988).

3. The Inspector General of the City of Philadelphia was created by executive order to investigate fraud and waste in city government.

the Inspector General. At the end of his six-month probationary period, Watson was again evaluated, this time by his supervisor, Mack Stokes, and the Operations Manager, Donald Jones. In this evaluation they recommended that Watson be rejected from regular service as a municipal guard, stating:

Your performance in the five (5) months as a Municipal guard has went from good to horrendous. You have shown supervision pure contempt. I have never given you an assignment without you questioning my competence. If you cannot have your way, you will go to no end to have it your way. Everyone must follow rules and you are no exception. You can not have fellow employee's sign you out on the time sheet. You are not a new City employee and you know better.

Mr. Lloyd Chambliss has admitted to me that he signed you out on 3/2/90 at lunch because you didn't show up. You have made him a partner in your misconduct which is unfortunate. Your disruptive behavior will not be tolerated.

This recommendation was approved by Finney on March 29, 1990, and Watson did not receive a permanent appointment as a municipal guard. He was then ordered to report back to his duties at the Philadelphia International Airport.

Watson filed an action under the Pennsylvania Whistleblower Law,[4] contending that he had been rejected from the position of municipal guard in retaliation for reporting his suspicions about Johnson and Finney to the Inspector General. The City denied that Watson's rejection was retaliatory and asserted that it had legitimate reasons for not retaining him.[5]

4. In order to prevail in an action brought under the Whistleblower Law, one must show:

prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.

43 § 1424(b).

5. 43 P.S. § 1424(c) provides:

Defense.—It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action

The case was heard by the trial court sitting without a jury. Watson first offered into evidence the entire contents of his personnel file, consisting of the favorable three-month evaluation and the notice of rejection. He then testified that he had brought his suspicions of Johnson and Finney to the Inspector General in good faith because he believed them to have violated City regulations. Contrary to the allegation contained in the rejection notice, he denied that his partner, Lloyd Chambliss, had ever signed him out on March 2, 1990 or any other day, and presented Chambliss' testimony to corroborate this assertion.

The City contended that Watson's rejection was not retaliatory and had a legitimate basis, and presented the testimony of his former co-workers and supervisor who stated that Watson often ignored job duties, was frequently absent from his assigned post, and was habitually insubordinate. In addition, Leon Wigrizer, the Inspector General to whom Watson made his allegations, testified that his office had not released Watson's name in connection with any of the allegations he had made and that such information was confidentially maintained within the Inspector General's office. Finally, the Building Operations Manager, Donald Jones, testified that he had received written memoranda regarding Watson's unsatisfactory performance and insubordination and, having maintained these documents, offered them into evidence. He stated that it was Watson's unsatisfactory performance as brought to his attention in these various memoranda that led him to concur in recommending Watson be rejected.

After the City rested, Watson's counsel requested that Watson be permitted to rebut the City's evidence of unsatisfactory job performance. The trial court refused on the basis that any evidence he could offer would be merely cumulative and contradictory. The trial court then dismissed Watson's action, finding that his rejection from the municipal guard position was due to unsatisfactory performance rather than in retaliation for having brought his allegations concerning either

by the employer occurred for separate and legitimate reasons, which are not merely pretextual.

Johnson or Finney to the Inspector General. After Watson's post-trial motion for a new trial was denied, he brought this appeal.[6]

Watson contends that he is entitled to a new trial because the trial court erred in refusing to permit him to rebut the City's evidence of unsatisfactory job performance. He argues that because the City's defense of unsatisfactory job performance raised issues different from those he was required to address in his case-in-chief, he was entitled to present evidence to rebut the City's defense as a matter of right.

Initially, the City contends that Watson has not properly preserved this issue for our review. In order to preserve an objection to the exclusion of testimony the party seeking to have the testimony admitted must make an offer as to what the testimony is going to establish. Only when such an offer is made can the trial court and reviewing appellate courts determine whether the testimony should be admitted, and additionally, for us, when the testimony is improperly excluded, determine whether that exclusion was harmful. *Commonwealth v. Flis,* 369 Pa.Superior Ct. 275, 535 A.2d 157 (1987) *appeal denied,* 519 Pa. 659, 546 A.2d 620 (1988). This requirement can be satisfied merely by identifying the purpose of the testimony to be offered. *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287 (1976). At the close of the City's case, Watson's counsel requested that he be allowed to present testimony to refute the evidence of unsatisfactory performance and insubordination raised in the memoranda offered by the City, to demonstrate that the memoranda were not a part of Watson's personnel file and to establish that Watson had never seen those documents before. The trial court summarily denied this request, and indicated that it would not entertain testimony that was simply in contradiction of the City's evidence. Under these circumstances, we believe Watson met the threshold required to preserve his objection.

6. In reviewing the order of a trial court denying a motion for a new trial, we will uphold that order unless the trial court abused its discretion or committed an error of law. *Phillips v. City of Philadelphia,* 148 Pa.Commonwealth Ct. 175, 610 A.2d 509 (1992).

■ Having determined that Watson properly preserved this issue for our review, we must next determine whether Watson was entitled to present rebuttal testimony. The Whistleblower Law envisions a shifting burden of proof. Initially, an employee is obligated to show that he reported wrongdoing prior to being subjected to adverse action. 43 P.S. § 1424(b). The burden then shifts to the employer to establish that there was a legitimate reason for the adverse action. 43 P.S. § 1424(c); *Freeman v. McKellar,* 795 F.Supp. 733 (E.D.Pa.1992). Once the employer offers such evidence, the burden then shifts back to the employee to demonstrate that this reason was merely pretextual.[7]

■ Watson made his *prima facie* showing that adverse action followed a good faith report of wrongdoing. The burden then shifted to the City to establish a non-pretextual reason for his rejection, in this case unsatisfactory job performance. Once the City satisfied this burden, Watson should have been given the opportunity to show that the City's evidence of unsatisfactory performance and insubordination was pretextual because the burden then shifted back to him to do so. Accord, *Feingold v. Southeastern Pennsylvania Transportation System,* 512 Pa. 567, 517 A.2d 1270 (1986).

■ Because Watson's rebuttal testimony could have satisfied his burden of showing the City's reason for rejection to be pretextual, its exclusion was harmful to Watson and constituted reversible error. *Appeal of Ligget,* 291 Pa. 109, 139 A. 619 (1927). However, we cannot simply remand this matter back to the trial court for the taking of additional testimony. Because Watson was harmed by the exclusion of testimony necessary to satisfy his burden of proof, we must grant his

7. The burden shifting under the Whistleblower Law is similar to that found employed in cases involving claims of unlawful discrimination brought under the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963. See, *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission,* 516 Pa. 124, 532 A.2d 315 (1987), where our Supreme Court adopted the shifting burden analysis of *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

request for a new trial even though the case was originally heard by the trial court sitting without a jury. *Stewart v. Prudential Insurance Co. of America,* 147 Pa.Superior Ct. 296, 24 A.2d 83 (1942).

Accordingly, the order of the trial court dismissing Watson's action is vacated, and the matter remanded for a new trial.

### ORDER

AND NOW, this 2nd day of March, 1994, the order of the Court of Common Pleas of Philadelphia, is vacated and the matter remanded for a new trial.

Jurisdiction relinquished.