**John P. GOLASCHEVSKY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Heard Aug. 12, 1996.

Decided Oct. 21, 1996.

Patrick M. McHugh, Philadelphia, for Petitioner.

Patrick H. Bair and Beth Liss Shuman, Harrisburg, for Respondent.

NARICK, Senior Judge.

The Department of Environmental Protection [1] (DEP) has filed a motion for summary judgment to John P. Golaschevsky's (Golaschevsky) complaint brought in this Court's original jurisdiction [2] under the Whistleblower Law, Act of December 12, 1986, P.L. 1559, 43 P.S. §§ 1421–1428 (Whistleblower Law or Law). We grant DEP's motion for summary judgment.

Golaschevsky began work for DEP as a probationary, at will, employee on September 7, 1993. He was classified as a Computer Systems Analyst I and assigned to work a newly-created position for DEP's District Mining Operations (DMO).[3] Golaschevsky

---

1. On July 1, 1995, the Department of Environmental Resources bifurcated and this case now falls under the Department of Environmental Protection's jurisdiction. *See* Conservation and Natural Resources Act, Act of June 28, 1995, P.L. 89, 71 P.S. §§ 1340.101–1340.1103.

2. 42 Pa.C.S. § 761.

3. Golaschevsky's duties and responsibilities were set forth in a Job Description, signed by Golaschevsky and dated November 1, 1993 (Exhibit H of the affidavit of Dennis L. Farley, Director of the Bureau of Human Services) which states:

This position reports directly to the Business Manager and is responsible for the following duties: assists district office clients (includes Mining and other Field Operations employees) in application development by providing definition, feasibility, analysis, design, specification, programming, testing, documentation and implementation consultation and guidance on IBM Compatible PC stand-alone, localized systems pertinent to a single field unit's needs. (Larger systems should be developed cooperatively with the Central Office Distributed System Group.)

was initially supervised by Paul Linnan, and later by Ms. Lynda Ronemus, who was directly supervised by Linnan.

On December 20, 1993, Golaschevsky met with Linnan and stated that he suspected that computer software was being improperly used at DMO in violation of federal copyright law. Golaschevsky would also later testify that some employees may have brought in computer programs from their home computer and used the programs in their computers at work. (*See* Notes of Testimony (N.T.) of Golaschevsky's February 13, 1996 deposition at 179). Golaschevsky was encouraged to make a detailed report, as his work priorities included conducting an inventory of hardware and software resources.

On January 7, 1994, Golaschevsky, a probationary employee, met with Linnan and Ronemus and was given an interim performance evaluation. The overall rating on the performance evaluation was "needs improvement." The report noted a number of performance-related problems, including lack of proficiency and failure to accomplish established goals. Linnan and Ronemus discussed Golaschevsky's performance problems with him, specifically, his failure to complete certain assignments, which had been established

as high priorities. Golaschevsky asserted that he was surprised as he believed he had performed well.

The following week, Golaschevsky was given a list of projects to accomplish in the first quarter of the year. With the assistance of Arthur Reed, Golaschevsky's union representative, a schedule was proposed and agreed to, designed to help Golaschevsky accomplish his projects in a timely fashion. DEP extended Golaschevsky's probationary status to allow him time to accomplish certain tasks.[4]

On April 15, 1994, Linnan and Ronemus gave Golaschevsky a second performance evaluation with an overall rating of "unsatisfactory." The report noted performance problems virtually identical to those noted in the earlier evaluation. DEP suspended Golaschevsky pending discharge, effective April 26, 1994.

Subsequent to his termination, Golaschevsky filed a formal complaint regarding his termination with the State Civil Service Commission, the Pennsylvania Human Relations Commission, the Federal Equal Employment Opportunity Commission and his union representative.[5] On October 12, 1994, Golaschevsky brought an action in this

---

*Ensure adherence to departmental standards, and assist in their refinement, for hardware, software, development, security and operation. Conducts initial problem diagnoses and coordinates necessary microcomputer hardware repair efforts with the appropriate vendor.* As Systems Coordinator for District Mining Operations, acts as liaison with BIS (Bureau of Information Services), Central Office Bureau of Mining and Reclamation Systems Coordinator and six (6) district mining offices located in different geographic areas across the state.
Attends Systems Coordinator meetings held periodically by BIS, which serve as a forum for information gathering, establishing departmental contacts, learning new policies and procedures, receiving guidelines, learning new techniques, keeping abreast of changing technologies, attending equipment demonstrations, etc.
Performs all training functions from need determination, scheduling, presenting through evaluating on the standard PC packages, the 4th Generation Languages Decision Support Tools, major systems such as LUMIS, DEC, and software packages such as Harvard Graphics, Reflex, Surfer, QEMM, ORACLE and ENABLE 4.5 etc. (Course design may be required for local conversions.)

Performs training functions and aids in uploading data to the Office of Surface Mining & Technical Information Processing System (TIPS).
Responsible for LAN's including the logical and physical design (devices, cabling, access methods and hardware/software selection), installation (cabling, repeaters, file servers, print and communication servers, user ID's).
Work is assigned by Business Manager by performance objectives and general broad goals. Employee will function with considerable autonomy as related Systems training is accomplished and special projects are determined in the district offices. (Emphasis added.)

4. According to the Rules of the Civil Service Commission, a probationary period may be as brief as six months or as long as eighteen months. *See* 4 Pa.Code § 97.31. Extension of an employee's probationary period is at the discretion of the employer. *Id.*

5. Each of Golaschevsky's complaints was either dismissed or was found to be beyond the jurisdiction or the ability of the tribunal to address.

Court's original jurisdiction under the Whistleblower Law, alleging that he had been retaliatorily terminated for reporting the illegal use of the Commonwealth's computers at the DMOs to his supervisors.

Following discovery, DEP filed a motion for summary judgment, asserting that Golaschevsky had failed to state a cause of action under the Whistleblower Law. This motion is now before this Court.

The standard for determining the propriety of entering summary judgment, the Court is to accept as true all well-pleaded facts in the non-moving party's pleadings. *Ruditsky v. Orben,* 121 Pa.Cmwlth. 215, 550 A.2d 836 (1988). However, the opposing party must do more than allege unsupported allegations. *McCain v. Pennbank,* 379 Pa. Superior Ct. 313, 549 A.2d 1311 (1988). Bald allegations are insufficient to create an element necessary for a *prima facie* case. *Kuehner v. Parsons,* 107 Pa.Cmwlth. 61, 527 A.2d 627 (1987). Neither can bald, conclusory allegations create genuine issues of material fact. *Commonwealth, Department of Environmental Resources v. Bryner,* 149 Pa. Cmwlth. 59, 613 A.2d 43 (1992).

Golaschevsky asserts that summary judgment cannot be entered against him because genuine issues of material fact exist as to his claim of DEP's violation of the Whistleblower's Law.

The Whistleblower Law provides that:

[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a). The Whistleblower Law provides further:

An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.

43 P.S. § 1424(b).

Golaschevsky asserts that he has established through credible evidence that he made a good faith report to his employer of wrongdoing and that his termination was pretextual. DEP asserts that Golaschevsky did not meet his burden of proving a *prima facie* case because Golaschevsky failed to present evidence which demonstrates that genuine issues of material fact exist. We agree.

Golaschevsky told his employer that he suspected violations of copyright law based upon his personal observations at the DMO offices and conversations with employees with respect to compliance with copyright laws. DEP asserts that the information was "innuendo and conjecture," and that Golaschevsky had no proof of violations of law, merely suspicions. DEP specifically notes that a supervisor, Ms. Ronemus, encouraged him to submit a list of the alleged illegal computer uses which Golaschevsky did not do.[6] Where suspicion triggers a report of waste or wrongdoing, the employee has made a report within the meaning of the Whistleblower Law. *Lutz v. Springettsbury Township,* 667 A.2d 251 (Pa.Cmwlth.1995). However, a mere report of alleged wrongdoing is not "credible evidence." Golaschevsky was certainly in a position to substantiate illegal computer use by various means, i.e., confiscation, photographing, but Golaschevsky failed to produce evidence of any alleged illegal computer use.[7]

---

**6.** Golaschevsky claims that he was not informed when Ronemus became his supervisor. The record contains a memo dated November 15, 1993, wherein Ronemus is assigned as Golaschevsky's immediate supervisor. Golaschevsky asserts that he never received such notice and thus, there is a material issue of fact. This allegation that Golaschevsky had no notice is irrelevant to our determination because both Linnan and Ronemus ad-

mit that Golaschevsky had informed them of alleged copyright violations.

**7.** DEP contends that it rebuts any presumption that it had not addressed such concerns in that it initiated an audit of unauthorized computer usage even before Golaschevsky became employed. *See* Exhibit I, Affidavit of Kenneth Currie that discussed Currie's suggestion for a department-

■ Even if Golaschevsky had introduced issues of material fact, we hold that Golaschevsky failed to meet his burden because his "report" to his supervisor was not a good faith report of wrongdoing under the meaning of the Law.[8]

Golaschevsky asserts that the conduct reported to Linnan constituted civil and perhaps criminal violations of the Copyright Act of 1974, 17 U.S.C. §§ 101–1010. Under that Act, computer programs may be copyrighted and the holder of a copyright has exclusive right to reproduce the copyrighted work. 17 U.S.C. § 106(1). "Anyone who violates any of the exclusive rights of the copyright holder ... is an infringer of the copyright." The term "anyone" includes "any State, any instrumentality of a State, and any officer or employee of the State or instrumentality of the State, acting in his or her official capacity." 17 U.S.C. § 501(a).

However, when an employee reports a violation of a federal law by the Commonwealth to his employer, this report is not necessarily protected activity. DEP argues that it is not charged to enforce the copyright laws for the good of the public because federal copyright law does not concern "the internal administration" of DEP, which would require protection for an employee that "blows the whistle." Unless the law broken is one which an agency is required to enforce, DEP claims an employee who reports the law breaking has no protection under the Whistleblower Law.

Golaschevsky asserts that DEP's argument that copyright law solely protects the interest of the copyright holder as against the general public is specious because the fundamental purpose of the grant of the copyright is enunciated in Article I, Section 8 of the Constitution of the United States as "to promote the progress of science and useful arts." We do not agree.

In *Gray v. Hafer*, 168 Pa.Cmwlth. 613, 651 A.2d 221 (1994), *aff'd per curiam*, 542 Pa. 607, 669 A.2d 335 (1995), we sustained the Commonwealth's preliminary objections, holding that a report of a violation of not just any law will qualify as a report of "wrongdoing" under the Whistleblower Law.[9] The law contains a requirement that the report of a violation of a "law or regulation ... that is designed to protect the interest of the public or employer". *Id.* 651 A.2d at 224. According to this Court, "that requirement means that a statute or regulation is of the type that the employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question." *Id.*

In *Gray*, an employee of the Auditor General's office, reported instances of criminal misconduct by Temple University employees. This "report," the Whistleblower there claimed, led ultimately to his dismissal by the Auditor General. We did not agree, finding that the reported instances of misconduct were not violations of any law or regulation which the Auditor General's office had the responsibility to enforce for the good of the public. Thus, the purported "wrongdoing" reported was found not to be "wrongdoing" under the Whistleblower Law. Because there was no wrongdoing, we held that there was no "report" of wrongdoing.

We illustrated this holding by using as an example parking tickets, which might be received by Temple University officials. Because parking ordinances are not laws of the type enforced by the Auditor General and have nothing to do with the internal administration of the office, their violation also would not be considered wrongdoing for purposes of the Whistleblower Law, and thus, not trigger the Law's protections.

> A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation of a code of conduct or ethics designed to protect the interest of the public or the employer.

wide audit to be incorporated into the Bureau of Information Services recommendation for audits in the 1993–1994 fiscal year. A formal request for a software audit was made to the Governor's Office of the Budget, Bureau of Audits for that fiscal year. (Klimkos deposition at 10.)

8. The definition of "wrongdoing" set forth in the Whistleblower Law, as enacted by the General Assembly, is:

9. The standard for sustaining preliminary objections is higher than our standard for granting summary judgment.

Golaschevsky argues that the violations in *Gray* were found not to be acts of "wrongdoing" under the Whistleblower Law solely because the violations were committed by officials of a third party (Temple University) and not the Auditor General. This is a misreading of the *Gray* opinion.

While the preliminary objections of the Auditor General in *Gray*, were partly based on this third party argument, our holding is much broader. The fact that the alleged wrongdoing was not committed by employees of the Auditor General was not the critical factor for purposes of the decision, i.e., the identity of the party committing the wrongdoing was not determinative. The determinative factor was that the violation was not of a statute or regulation that the Auditor General was charged to enforce for the good of the public.

The plain intent of the Whistleblower Law is to encourage employees to report genuine instances of waste and wrongdoing by their State government employers, free from the fear of retaliation. *See Rodgers v. Pennsylvania Department of Corrections*, 659 A.2d 63 (Pa.Cmwlth.1995). The Law simply is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his fellow employees. In other words, random misuse of computer software by DMO employees, even if true, is no different that the traffic ticket example used as an example in *Gray*.

■ *Gray* also provides that a Whistleblower claimant *must, as part of his case-in-chief,* prove a causal connection between the report of wrongdoing and the retaliatory act. Even if Golaschevsky succeeded in adducing evidence specifying how the DMO employees were guilty of "wrongdoing" and showing that he reported the wrongdoing, he "must also show by concrete facts or surrounding circumstances that the report led to [his] dismissal." *Id.* 651 A.2d at 225.

The causal connection must by shown by facts or circumstances, such as "specific di-

rection or information [he] received not to file the report or there would be adverse consequences because the report was filed." *Id.* Golaschevsky received no "specific direction or information ... not to file the report" of alleged misused software nor was he intimidated with "adverse consequence" if he filed a report concerning misused software which would demonstrate a causal connection. On the contrary, Golaschevsky admitted that Ronemus encouraged him to make a detailed report.

Golaschevsky asks us to infer a causal connection because it is difficult to show such causal connection in a Title VII-type case, such as this. Golaschevsky asserts that we can make this inference because of the short amount of time which passed between the report and his discharge. Golaschevsky's report to his employer was made on December 20, 1993, his discharge was effective April 26, 1994, over four months later.

This argument, that an inference of causal connection can be taken solely from the passage of time, was specifically rejected by *Gray*. In fact, we cautioned that if such a minimal pleading requirement were adopted, virtually any government employee who files a report, founded or unfounded, would "automatically make out a *prima facie* case" if he was terminated, even in the absence of any evidence that the events were related. *Id.* If such a negligible precondition be all that is required under the Whistleblower Law, it would make it unreasonably difficult for a government employer to discipline or discharge employees who would make baseless claims while not adequately performing their job.[10]

Golaschevsky also claims that there are other material issues of fact which will not allow this court to grant DEP's motion for summary judgment. These alleged facts are based on Golaschevsky's argument that his work performance was acceptable, and that because he believes his work was acceptable, he must have been dismissed for some other,

---

**10.** We note that in cases where we have explicitly rejected the "proximity" argument, the intervening period of time was the same or less than the period here. In *Gray*, the time between the allege report and the retaliatory act was also

approximately four months. In *Lutz*, the period of time between the alleged report and retaliation was less than three months. In neither case did we infer a causal connection from proximity in time.

impliedly unlawful, reason. However, this argument places the proverbial cart before the horse. Under a Title VII shifting burden analysis, the issue of pretext is not germane until sufficient evidence of a *prima facie* case has first been produced. Golaschevsky attempts to bootstrap essential elements of his burden of proof by suggesting that we infer that his discharge by DEP violated the Law because he was doing a good job otherwise. Golaschevsky claims cooperation from his fellow employees ceased and a fellow employee was even instructed by Linnan not to cooperate with him. However, the evidence does not support these assertions, and in fact is to the contrary.

Even if Golaschevsky made a *prima facie* case, the burden would have then shifted to DEP to establish that there were separate and legitimate reasons for the adverse action. *Watson v. City of Philadelphia*, 162 Pa. Cmwlth. 340, 638 A.2d 489 (1994). DEP did offer such evidence in the testimony of Linnan and Ronemus that Golaschevsky was given a performance evaluation which reflected wide-ranging unhappiness with his employment. Only after DEP's rebuttable evidence would the burden have shifted back to Golaschevsky to demonstrate that this reason was merely pretextual. *Id.* Because Golaschevsky, an at will employee, did not meet his *prima facie* case, the burden never shifted to DEP nor back to him.

Accordingly, we grant DEP's motion for summary judgment as no issues of material fact exist and dismiss Golaschevsky's complaint.

### ORDER

AND NOW, this 21st day of October, 1996, the Department of Environmental Protection's motion for summary judgment is granted and John P. Golaschevsky's complaint is dismissed.